UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
CITY OF WARREN POLICE AND FIRE : Civil Action No.
RETIREMENT SYSTEM, Individually and on :
Behalf of All Others Similarly Situated, : CLASS ACTION
:
Plaintiff, : COMPLAINT FOR VIOLATION OF THE
: FEDERAL SECURITIES LAWS
vs. :
:
FOOT LOCKER, INC., RICHARD A. :
JOHNSON and LAUREN B. PETERS, :
:
Defendants. :
---------------------------------------------------------- x DEMAND FOR JURY TRIAL

Plaintiff City of Warren Police and Fire Retirement System ("plaintiff") alleges the following based upon the investigation of plaintiff's counsel, which included a review of U.S. Securities and Exchange Commission ("SEC") filings by Foot Locker, Inc. ("Foot Locker" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all purchasers of Foot Locker common stock between August 19, 2016 and August 17, 2017, inclusive (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and SEC Rule 10b-5 [17 C.F.R. §240.10b-5]. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because certain of the acts and practices complained of herein occurred in this District.

4. In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

## PARTIES

5.      Plaintiff City of Warren Police and Fire Retirement System purchased Foot Locker common stock, as set forth in the accompanying certification incorporated herein by reference, and has been damaged thereby.

6.      Defendant Foot Locker is an athletic shoe and apparel retailer. Foot Locker common stock traded in an efficient market on the New York Stock Exchange throughout the Class Period under the ticker symbol "FL." As of November 24, 2017, Foot Locker had more than 121.2 million shares issued and outstanding.

7.      Defendant Richard A. Johnson ("Johnson") is, and was at all relevant times, Foot Locker's President, Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

8.      Defendant Lauren B. Peters ("Peters") is, and was at all relevant times, the Chief Financial Officer ("CFO") of Foot Locker.

9.      Defendants Johnson and Peters are referred to herein as the "Individual Defendants." Foot Locker and the Individual Defendants are referred to herein, collectively, as "defendants."

10.     Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Foot Locker. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Foot Locker common stock was a success, as it: (i) deceived the investing public regarding Foot Locker's prospects and business; (ii) artificially inflated the price of Foot Locker common stock; (iii) allowed certain of Foot Locker's executives and insiders to sell more than $13.38 million worth of their personally held shares of Foot Locker common stock to the unsuspecting public; and (iv) caused plaintiff and other members of the Class to purchase Foot Locker common stock at inflated prices.

**SUBSTANTIVE ALLEGATIONS**

11. Defendant Foot Locker is an American sportswear and footwear retailer with headquarters in Midtown Manhattan. As of October 28, 2017, Foot Locker had 3,349 stores in 23 countries in North America, Europe, Australia and New Zealand.

12. The Class Period starts on August 19, 2016. On that day, before the market opened, Foot Locker issued a press release announcing its second quarter 2016 ("2Q16") financial results for the period ended July 30, 2016. Foot Locker stated that 2Q16 comparable store sales had grown 4.7%, gross margins had improved 40 basis points, net income had reached $127 million, and earnings per share ("EPS") had increased 12% to $0.94 per share. Defendant Johnson commented on the results, stating in pertinent part as follows:

> "As a Company, Foot Locker has strong leadership positions in the athletic industry, with the most important being ***our deep understanding of the core customer*** for each of our banners . . . . ***We share this understanding with our key vendors, which enables us to partner with them to deliver the trend-right, premium footwear and apparel assortments our customers seek***, which in turn has led to ***consistently outstanding financial results*** such as we announced today. Within the second quarter, we drove comparable sales gains across basketball, running, and classic footwear, as well as apparel. We also posted gains in all regions and channels in which we operate, reflecting the success of our strategic initiatives to build our Company to be an enduring retail leader with strengths across many dimensions."

Defendant Peters commented on the results, stating in pertinent part as follows:

> "The Company has made substantial and thoughtful investments in its stores, digital sites, and infrastructure over the years, which have led to significantly improved productivity . . . . The returns from those investments, combined with careful inventory and expense management, have led to ***our current strong financial position***. This position of strength underpins our commitment to balance our allocation of capital between additional investments in the business and returning substantial amounts of cash to shareholders through our dividend and share repurchase programs, as evidenced by the $350 million of cash we have returned to shareholders in the first half of 2016."

13. That same day, before the opening of the market, Foot Locker conducted a conference call with analysts and investors to discuss the Company's earnings and operations.

During the conference call, defendants made positive statements about the Company's then-present business metrics and financial prospects.

14. On November 18, 2016, Foot Locker issued a press release announcing its third quarter 2016 ("3Q16") financial results for the period ended October 29, 2016. Foot Locker reported that 3Q16 comparable store sales had again grown 4.7%, the gross margin rate had improved to 33.9%, net income had reached $157 million, and EPS were $1.17 per share. Defendant Johnson commented on the Company's results, stating in pertinent part as follows:

> "***Our outstanding track record of meaningful sales and profit growth over several years is a strong testament to Foot Locker, Inc.'s solid position at the center of sneaker culture*** . . . . Our associates work hard every day to make our Company the sneaker lover's preferred destination for the best footwear and apparel assortments across our array of outstanding athletic vendors. That work translated once again into an exceptional quarterly sales and profit performance."

Defendant Peters commented on the Company's purportedly continuing strong financial metrics, stating in pertinent part as follows:

> "The Company continued to execute its strategic initiatives and produce excellent financial results in the quarter, ***with solid, consistent top-line growth***, as well as incremental improvements in both gross margin and SG&A rates. Our inventory is fresh and well-positioned as we prepare for the important holiday selling season, and we remain well on track to achieve our annual guidance of a mid-single digit comparable-store sales gain and double-digit earnings per share growth."

15. That same day, Foot Locker conducted a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, defendants made additional positive statements about the Company's then-present business metrics and financial prospects.

16. On February 24, 2017, Foot Locker issued a press release announcing its fourth quarter 2016 ("4Q16") and fiscal 2016 ("FY16") financial results for the period ended January 28, 2017. Foot Locker reported that 4Q16 comparable store sales had grown 5%, FY16

comparable store sales had grown 4.3%, the 4Q16 gross margin rate had improved to 33.7%, 4Q16 net income had reached $189 million, and 4Q16 EPS were $1.42 per share. Defendant Johnson commented on the Company's financial results, stating in pertinent part as follows:

> "Generating our seventh consecutive year of meaningful sales and profit growth is *a strong testament to Foot Locker, Inc.'s solid position at the center of sneaker culture* . . . . All credit goes to the incredibly talented team of associates we have around the world, and I want to thank them sincerely for another outstanding performance in 2016. Due in part to the change in the cadence of income tax refund check distribution, we are facing a challenging retail sales environment as we enter 2017; however, *we believe the strategic initiatives we have in place, coupled with our strong vendor relationships, will enable us to deliver another year of record performance*."

Defendant Peters commented on the Company's financial results, stating in pertinent part as follows:

> "*We continued to make substantial progress in 2016 towards our long-term goals* . . . . Our Earnings Before Interest and Taxes surpassed $1 billion for the first time in our history and the EBIT rate improved to 13 percent of sales. Our adjusted net income margin increased to 8.4 percent and our sales per gross square foot reached $515. Although we currently face a softer sales environment than at this time last year, *we are planning for a mid-single digit comparable sales gain and a double-digit earnings per share increase for the full year of 2017*."

17. That same day, Foot Locker conducted a conference call with analysts and investors to discuss the Company's earnings and operations. During the conference call, defendants made additional positive statements about the Company's then-present business metrics and financial prospects.

18. The statements referenced above in ¶¶12-17 were materially false and misleading when made, because they failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a) that Foot Locker's vendors were transitioning to selling through various online retailers, diminishing the utility of Foot Locker's large number of brick and mortar stores and the once-high value of its exclusivity relationships with those vendors;

(b) that competition with online retailers had increased the pricing competition Foot Locker faced while concomitantly lowering demand at its stores; and

(c) that, as a result, defendants' statements about Foot Locker's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

19. On May 19, 2017, Foot Locker issued a press release announcing its first quarter 2017 ("1Q17") financial results for the period ended April 29, 2017. Foot Locker reported that its 1Q17 revenue growth had plummeted, falling to essentially flat. Same store sales increased only a mere half percent. As a result, Foot Locker reported that its profits fell during the period to $180 million, or $1.36 per share, below the $1.38 per share the Company had led investors to expect, and well below the $191 million, or $1.39 per share, the Company had reported for 1Q16. During the conference call held with investors and analysts that morning, defendants further disclosed that this trend was not restricted to the second half of 2016 and 1Q17, but would continue, and that the Company was then forecasting second quarter 2017 ("2Q17") comparable store sales up only in the low single digits, with profits relatively flat compared to the 2Q16. Defendants stated that if sales did not improve, the Company would be forced to cut costs and inventory in order to make its 2017 financial guidance of a mid-single digit EPS increase.

20. In response, the price of Foot Locker common stock declined precipitously, from its open of $70.45 per share on May 19, 2017 to a close of $58.72 per share, a decline of nearly

17% on unusually high trading volume of more than 16 million shares traded, or more than eight times the average daily trading volume over the preceding 30 trading days.

21.    On August 18, 2017, before the open of trading, Foot Locker issued a press release announcing its 2Q17 financial results for the period ended July 29, 2017.  Foot Locker reported that its 2Q17 *revenues had now actually declined 4.4% year-over-year*, falling nearly $80 million from $1.78 billion in the 2Q16 to $1.7 billion in the 2Q17.  *Same store sales fell a full 6%*.  As a result, Foot Locker reported that its profits fell during the period to just $51 million, or $0.39 per share, drastically below the $0.90 per share the Company had led investors to expect, and well below the $127 million, or $0.94 per share, the Company had reported in 2Q16.  The Company also stated that it would close approximately 130 stores, more than the 100 stores it had previously announced it would close.  During the conference call held with investors and analysts that morning, the Company said it expected weaker sales for the remainder of FY17, with same store sales likely to be down between 3% and 4% for 3Q17 and 4Q17.

22.    In response, the price of Foot Locker common stock declined precipitously, from a close of $47.70 per share on August 17, 2017 to a close of $34.38 per share on August 18, 2017, on unusually high trading volume of more than 36.2 million shares traded, or more than nine times the average daily trading volume over the preceding ten trading days.

## ADDITIONAL SCIENTER ALLEGATIONS

23.    As alleged herein, Foot Locker and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as

primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Foot Locker, their control over, and/or receipt and/or modification of Foot Locker's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Foot Locker, participated in the fraudulent scheme alleged herein.

24. The Individual Defendants were further motivated to misrepresent the Company's business metrics and financial prospects in order to profit from selling Foot Locker common stock. Indeed, during the Class Period, Foot Locker senior executives and directors, including both of the Individual Defendants, sold 192,162 shares of their personally held Foot Locker stock, reaping *more than $13.38 million* in gross proceeds:

| SELLER | DATE | SHARES | PRICE | PROCEEDS |
|---|---|---|---|---|
| **Defendant Johnson**<br>President, CEO & Chairman of the Board | 08/19/16 | 50,000 | $68 | $3,402,000 |
| **Defendant Peters**<br>CFO | 08/22/16<br>03/08/17 | 20,000<br>25,000<br>45,000 | $68.00<br>$77.51 | $1,360,000<br>$1,937,650<br>$3,297,650 |
| **Lewis Phillip Kimble**<br>Exec. VP/CEO Int'l | 09/07/16 | 43,479 | $65.38-$65.46 | $2,843,682 |
| **Cheryl N. Turpin**<br>Director | 10/12/16<br>03/02/17 | 10,000<br>2,000<br>12,000 | $69.16<br>$76.17 | $691,600<br>$152,340<br>$843,940 |
| **Nicholas P. Dipaolo**<br>Director | 10/13/16 | 5,424 | $68.75 | $372,900 |
| **Matthew M. McKenna**<br>Director | 11/29/16<br>03/01/17 | 6,659<br>5,000<br>11,659 | $72.39<br>$75.92 | $482,045<br>$379,600<br>$861,645 |

| | | | | |
|---|---|---|---|---|
| **Paulette Alviti** | 12/05/16 | 10,000 | $75.23-$75.37 | $753,280 |
| Sr. VP/Chief HR Officer | 04/20/17 | 8,000 | $74.50 | $596,000 |
| | | 18,000 | | $1,349,280 |
| | | | | |
| **Jarobin Gilbert** | 12/06/16 | 1,000 | $76.23 | $76,230 |
| Director | | 5,600 | $59.40 | $332,640 |
| | | 6,600 | | $408,870 |
| | | *192,162* | | *$13,380,580* |

## LOSS CAUSATION/ECONOMIC LOSS

25. During the Class Period, as detailed herein, the defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Foot Locker securities and operated as a fraud or deceit on Class Period purchasers of Foot Locker securities by misrepresenting the Company's business and prospects. Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Foot Locker securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Foot Locker securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

26. Foot Locker's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

27. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Foot Locker who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as

- 9 -

they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Foot Locker common stock during the Class Period who were damaged thereby (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Foot Locker common stock was actively traded. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Foot Locker or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the 1934 Act was violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Foot Locker; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

34. Plaintiff incorporates ¶¶1-33 by reference.

35. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

36. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

 (a) employed devices, schemes and artifices to defraud;

 (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

 (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Foot Locker common stock during the Class Period.

37. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Foot Locker common stock. Plaintiff and the Class would not have purchased Foot Locker common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### Violations of §20(a) of the 1934 Act
### Against All Defendants

38. Plaintiff incorporates ¶¶1-37 by reference.

39. The Individual Defendants acted as controlling persons of Foot Locker within the meaning of §20(a) of the 1934 Act. By reason of their positions with the Company, and their ownership of Foot Locker stock, the Individual Defendants had the power and authority to cause Foot Locker to engage in the wrongful conduct complained of herein. Foot Locker controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such equitable/injunctive or other relief as may be deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury

DATED:  March 9, 2018                    ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         MARY K. BLASY


                                                  *s/ Samuel H. Rudman*
                                             SAMUEL H. RUDMAN

                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)
                                         srudman@rgrdlaw.com
                                         mblasy@rgrdlaw.com

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Attorneys for Plaintiff

J:\NY Cases\Foot Locker 2018\Pleadings\Cpt Foot Locker.docx

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5. (a) Plaintiff has been appointed to serve as a representative party for a class in the following actions filed under the federal securities laws within the three-year period prior to the date of this Certification:

*Sohol v. Yan, et al.*, No. 1:15-cv-00393 (N.D. Ohio)
*In re Plains All American Pipeline, L.P. Sec. Litig.*, No. 4:15-cv-02404 (S.D. Tex.)

(b) Plaintiff is seeking to serve as a representative party for a class in the following actions filed under the federal securities laws:

(c) Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws within the three-year period prior to the date of this Certification:

*City of Warren Police and Fire Retirement System v. Zebra Technologies*, No. 2:17-cv-4412 (E.D.N.Y.)
*City of Warren Police and Fire Retirement System v. TransDigm Group*, No. 1:17-cv-01677 (N.D. Ohio)

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 15 day of February, 2018.

CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM

By: _Scott D. Sala_____

Its: _Chairperson_____

FOOT LOCKER


## SCHEDULE A

## SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 01/19/2017 | 5 | $68.44 |
| 01/19/2017 | 37 | $69.13 |
| 01/19/2017 | 67 | $68.73 |
| 01/19/2017 | 98 | $69.09 |
| 01/23/2017 | 33 | $68.63 |
| 01/24/2017 | 370 | $68.99 |
| 06/23/2017 | 438 | $48.03 |

**Sales**

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 10/12/2016 | 16 | $69.23 |
| 11/14/2016 | 1 | $71.63 |
| 11/14/2016 | 1 | $71.64 |
| 11/14/2016 | 2 | $71.66 |
| 11/14/2016 | 13 | $72.22 |
| 11/14/2016 | 19 | $71.83 |
| 11/14/2016 | 30 | $71.45 |
| 11/14/2016 | 31 | $72.50 |
| 11/14/2016 | 44 | $72.16 |
| 11/14/2016 | 46 | $71.66 |
| 11/14/2016 | 84 | $71.55 |
| 11/14/2016 | 88 | $72.91 |
| 11/14/2016 | 145 | $72.23 |
| 11/15/2016 | 5 | $71.73 |
| 11/15/2016 | 8 | $70.06 |
| 11/15/2016 | 8 | $70.07 |
| 11/15/2016 | 8 | $70.07 |
| 11/15/2016 | 9 | $70.07 |
| 11/15/2016 | 9 | $70.07 |
| 11/15/2016 | 33 | $70.61 |
| 11/15/2016 | 112 | $70.86 |
| 11/15/2016 | 153 | $70.20 |
| 11/15/2016 | 156 | $70.03 |
| 11/15/2016 | 245 | $70.51 |
| 01/12/2017 | 34 | $70.35 |
| 02/14/2017 | 28 | $70.64 |
| 03/14/2017 | 27 | $75.86 |
| 03/27/2017 | 12 | $72.80 |
| 04/11/2017 | 16 | $72.48 |
| 05/11/2017 | 20 | $75.81 |
| 06/13/2017 | 20 | $55.10 |
| 06/20/2017 | 2 | $50.93 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 06/20/2017 | 22 | $50.75 |
| 06/20/2017 | 31 | $50.40 |
| 06/20/2017 | 37 | $50.33 |
| 06/20/2017 | 40 | $50.25 |
| 06/20/2017 | 55 | $50.74 |
| 06/20/2017 | 121 | $50.91 |
| 06/20/2017 | 433 | $50.44 |
| 06/21/2017 | 10 | $46.26 |
| 06/21/2017 | 27 | $46.00 |
| 06/21/2017 | 34 | $47.76 |
| 06/21/2017 | 71 | $45.71 |
| 06/21/2017 | 104 | $46.64 |
| 06/21/2017 | 111 | $45.48 |
| 06/21/2017 | 567 | $47.59 |
| 06/21/2017 | 665 | $46.51 |
| 06/22/2017 | 355 | $47.76 |
| 06/23/2017 | 41 | $47.46 |
| 06/23/2017 | 247 | $48.03 |
| 06/23/2017 | 851 | $48.22 |

*Opening position of 4,718 shares.